## PENICK v. CASTLES.

(Court of Civil Appeals of Texas. Amarillo. Jan. 13, 1912. Rehearing Denied Feb. 16, 1912.)

1. FRAUDS, STATUTE OF (§ 14*)—PAROL CONTRACTS—VALIDITY.

Defendant, acting for himself and his partner, sold cattle to a third person, who delivered in partial payment a check for $650, which was not paid. The third person at the same time bought cattle from plaintiff's intestate for $7,200, and contracted to buy other cattle, and agreed to pay $1,000 as earnest money. The third person drew his check on a bank, payable to the intestate, for $8,850, which included the amount of the $650 unpaid check. The bank paid the check, but on discovering that $1,650 did not represent the price of cattle bought by the third person, as represented, it sued the intestate therefor. The third person failed to pay the price of the cattle bought from defendant, and defendant and his partner kept the cattle. Defendant had no interest in the dealings between the third person and the intestate, and had no knowledge for several years that the $650 check had not been paid. *Held,* that a parol promise by defendant to pay his pro rata of any recovery by the bank in its action against the intestate was not enforceable, within the statute of frauds (Sayles' Ann. Civ. St. 1897, art. 2543), as a promise to hold defendant on any part of the intestate's individual indebtedness.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 14; Dec. Dig. § 14.*]

2. LIMITATION OF ACTIONS (§ 146*)—RENEWAL PROMISE—ORAL PROMISE—VALIDITY.

A cause of action in favor of the intestate against defendant, because defendant received $650, arose as soon as such sum was placed to the credit of defendant and his partner on the books of the bank; and under Sayles' Ann. Civ. St. 1897, art. 3354, an action thereon was barred in two years, and a parol promise, made after the expiration of the two years, to pay the claim was not sufficient, under section 3370, to renew the obligation.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 593–596; Dec. Dig. § 146.*]

3. BANKS AND BANKING (§ 142*)—PAYMENT OF CHECKS—LIABILITY—RIGHTS OF BANK.

The bank had no cause of action against defendant, either alone or jointly with any other person, because neither defendant nor any person having authority to represent him had any dealing with the bank.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 142.*]

4. BANKS AND BANKING (§ 142*)—PAYMENT OF CHECKS—RIGHT TO FUNDS.

The legal and equitable title to the funds arising from the $8,850 check passed to the intestate when the check was paid, subject only to the right of the bank to recover from the intestate, as a result of mistake, an amount equal to the amount paid to intestate by the bank under the mistake.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 142.*]

Appeal from District Court, Jones County; P. A. Martin, Special Judge.

Action by Sid G. Castles, administrator of J. D. McGaughey, against R. L. Penick. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

W. T. Andrews and A. H. Carrigan, for appellant. Chapman & Coombes and Kirby & Davidson, for appellee.

GRAHAM, C. J. On June 20, 1911, appellee filed in the district court of Jones county his second amended petition, in lieu of his first amended petition, filed therein on June 5, 1909; it being in lieu of his original petition, filed on October 26, 1908, for the recovery of $650, with interest and court costs paid by the estate of J. D. McGaughey to the First State Bank of Larned, Kan.

Allegations being made, in substance, that on June 13, 1903, C. W. Clarke drew a check on the First State Bank of Larned, Kan., payable to J. D. McGaughey, for the sum of $8,850; that same was paid by said bank, and that J. D. McGaughey appropriated $8,-250 thereof, $7,200 of which was to cover the purchase price for certain cattle sold by McGaughey to Clarke, and $1,000 of said $8,250 was appropriated by McGaughey as a forfeit on a certain cattle trade Clarke had made with him, and which was not carried out by Clarke; that said $8,250 check was, by the First National Bank of Stamford, Tex., collected for said McGaughey, and $650 of the proceeds thereof, with the consent of McGaughey, deposited to the credit of Penick-Hughes Company, for the use and benefit of Penick & Hughes, who appropriated the same; appellant being the Penick in said firm of Penick & Hughes. Allegation being also made that said Clarke had also contracted to purchase certain cattle from Penick & Hughes, and, having failed to carry out said contract, said $650 was paid as a forfeit on said contract.

Appellee also alleged that the First State Bank of Larned, Kan., had sued J. D. McGaughey for $1,650, represented by the proceeds of said draft, and recovered same and interest and court costs on allegations that that amount had been paid by the said bank under a mistake of fact; that, during the pendency of said suit and before judgment was recovered in said cause in the trial court, J. D. McGaughey having died, and appellee having qualified as administrator of his estate, appellee notified appellant that he intended making him a party to that suit as a means of protecting McGaughey's estate in the event of a recovery therein by the bank, and that appellant requested that the suit be proceeded with without his being made a party thereto, and agreed that if he was not made a party he would, in the event of a recovery by the bank, pay his pro rata of such judgment as should be recovered, including all costs; that at the time of said conversation appellee did not know that the firm of Penick & Hughes had appropriated said $650, or that even such a firm had existed, but supposed that appellant alone had appropriated same; that after said conver-

sation appellee employed counsel and defended said suit in all the courts to which it was carried, but that judgment was finally rendered for the bank against McGaughey's estate, and that said estate had been compelled to and has paid off said judgment; that appellant, though often requested, had failed to pay his pro rata or any part thereof, which amounted to $1,250.

On January 20, 1911, appellant filed in this suit his second amended answer, consisting of a general demurrer; special exceptions, to the effect that appellee's pleadings showed the cause of action sued on to be barred by the two-year statute of limitations, the suit, according to the allegations in the pleading, having been filed more than two years after the cause of action sued on accrued, and the promise to pay not being alleged to be in writing, that said pleading showed the cause of action sued on was barred by the four-year statute of limitations, and that no original liability is shown to have existed in favor of the First State Bank of Larned, Kan., against appellant, that the pleadings showed the suit to be based on a promise to answer for the debt, default, or miscarriage of another, and it is not alleged to be in writing; a general denial; a special plea setting up the two-year statute of limitation; a special plea setting up the four-year statute of limitations; a special plea setting up the statute of fraud against the alleged promise to pay, alleging a dissolution by settlement of the affairs of the firm of Penick & Hughes long before the alleged promise; a special defense, to the effect that such cause of action, if any, as the First State Bank of Larned, Kan., ever had against McGaughey, grew out of the fact that McGaughey had, before accepting from Clarke the $8,850 check, wired said bank to know if it would pay Clarke's check for cattle, and received a reply from the bank that it would; that if it be a fact that appellant received any of the proceeds from said check he was not aware of it for many years thereafter, had no knowledge of the kind of contract McGaughey had made with Clarke, and had no interest therein.

Judgment was rendered in the court below on the verdict of the jury for the sum of $1,038.80 and costs of suit in favor of McGaughey's estate and against appellant, from which judgment appellant has appealed to this court.

The evidence shows the following facts:

On and prior to May 30, 1903, R. L. Penick and Ed S. Hughes owned a bunch of cattle together, handling them under the name of Penick & Hughes. There was also at the same time a mercantile corporation, doing business at Stamford under the name of Penick-Hughes Company, of which corporation appellant was apparently manager. On May 30, 1903, appellant, acting for himself and Ed S. Hughes, "made a sale of the cattle owned by Penick & Hughes to C. W. Clarke,"

and Clarke made a partial payment on the cattle in the sum of $650 by executing and delivering to appellant a check on a live stock commission company of Kansas City. The check was by Penick properly indorsed and delivered to the First National Bank of Stamford, with instructions to place to the credit of the account of Penick-Hughes Company, which was done by the bank, and the check forwarded by it for collection. About this time, Clarke also purchased certain cattle from J. D. McGaughey at a price of $7,200, and in a separate contract agreed to purchase from J. D. McGaughey certain other cattle, and to bind the trade last mentioned agreed to pay $1,000 as a forfeit or earnest money.

Prior to June 13, 1903, the check given Penick by Clarke on May 30, 1903, having been returned to the bank at Stamford unpaid, and McGaughey, on June 12, 1903, having wired the First State Bank of Larned, Kan., as follows, "Will you pay C. A. Clarke's check for cattle?" to which the bank replied, "Yes," Clarke made his check on said bank for the sum of $8,850, payable to J. D. McGaughey, who indorsed and delivered it for collection to the First National Bank of Stamford, which forwarded it for payment, and it was duly paid.

It appears from the testimony that, at the instance of Clarke and with the consent of the bank and McGaughey, Clarke included in the McGaughey check the $650 he had tried to pay Penick in the check on the commission company, and that when the proceeds arrived from this $8,850 check the First National Bank of Stamford, with the consent of McGaughey, placed $650 to the credit of Penick-Hughes Company's account. When the $650 check was returned unpaid, the bank at Stamford charged the account of Penick-Hughes Company with $650.

The record shows conclusively that neither Penick nor Hughes had any interest in any of the business dealings between McGaughey and Clarke, and had no knowledge for several years thereafter that the $650 check had been returned unpaid, that the bank had charged it back to the account of Penick-Hughes Company, or that the $650 had again been placed to the credit of Penick-Hughes Company after the $8,850 check was paid; and the evidence conclusively shows that neither the bank, McGaughey, nor any other person had any authority from Penick or Hughes to collect the $650 for them, or for their benefit, from the Kansas bank, as was done, or to collect it in any other way, except through the original $650 check mentioned.

The record shows that Clarke failed to carry out the contract made with McGaughey on which he had paid the $1,000 forfeit, and it also shows that he failed to pay the balance of the purchase price of the cattle purchased by him from Penick & Hughes, and that as a result thereof Penick & Hughes

kept their cattle, and McGaughey kept his.

The First State Bank of Larned, Kan., having learned that $1,650 of the $8,850 check it had paid for Clarke did not, as it contended, represent the purchase price of cattle purchased by Clarke, sued McGaughey therefor, on the ground that the $1,650 had been paid him through a mistake by said bank, and McGaughey having died during the pendency of said suit, and Sid G. Castles having qualified as administrator of McGaughey's estate, and proceeded to defend in the suit, judgment was finally rendered for the bank and against McGaughey's estate for the said sum, including interest and costs, which judgment was finally paid by said estate.

The testimony shows conclusively that the firm of Penick & Hughes wound up their affairs about January 1, 1905, when a final settlement was had among the members of said firm; that McGaughey died in 1905; and the evidence tends to show that, while the suit was pending in the trial court between the Kansas bank and McGaughey's estate, Penick was informed by Sid G. Castles, as administrator, that he intended to make Penick a party to that suit as a means of protecting McGaughey's estate in the event of a recovery by the bank, and that thereupon Penick told Castles to prosecute the suit without him (Penick) being made a party thereto, and promised, if McGaughey's estate lost the suit, he (Penick) would pay his pro rata of the recovery; and the evidence conclusively shows that Penick was not made a party to that suit. The record shows conclusively that this arrangement or agreement between Castles and Penick was not reduced to writing or signed by either party thereto, and that the $650 was due Penick & Hughes as a part of the purchase price of cattle sold, and not as a forfeit to secure an option to purchase cattle from Penick & Hughes by Clarke.

Appellant brings this case before us on many assignments of error, but the view we have of the disposition that should be made of the appeal renders it unnecessary to discuss them, further than to say that the questions on which the appeal will be disposed of are fully covered and presented by the assignments brought forward in appellant's brief.

As we view the matter, the only theory upon which appellee could recover is because of a joint liability by appellant and McGaughey to the First State Bank of Larned, Kan., for some portion of the claim covered by the judgment recovered by said bank against McGaughey's estate, or because McGaughey was secondarily liable and appellant primarily liable to said bank for some portion of the claim covered by said judgment, so as to make it the legal duty of appellant to respond in contribution, after McGaughey's estate had been compelled to pay the judgment recovered against it by said bank. All such claims, if any, as McGaughey's estate ever had against appellant, except they arose as above stated, were barred by the statute of limitations, as the record conclusively shows, before this suit was filed.

[1, 2] The record also conclusively shows that the alleged promise of appellant to Sid G. Castles, administrator, to pay any part of the judgment recovered by the bank against the estate of McGaughey, was not in writing, and therefore was not sufficient on which to hold appellant on any part of McGaughey's individual indebtedness, and, as said promise was not in writing, it was also not sufficient to renew any such debt or claim as McGaughey may have had as an original obligation against appellant; such original obligation also at that time having been barred by the statute of limitations. In so far as McGaughey had an original and personal cause of action against appellant, because of appellant having received from him or the bank at Stamford the $650, the cause of action arose at once on same being placed to the credit of Penick-Hughes Company on the books of said bank, and the record shows without contradiction that this occurred on June 13, 1903, and that this suit was not filed until October 26, 1908. All such claims as had ever existed under this theory of the case were barred by the statute of limitations before the alleged promise of appellant to Castles, as that promise is shown to have been made in 1906; the cause of action having accrued on June 13, 1903, and McGaughey having died on October 13, 1905. See articles 2543, 3354, and 3370, Sayles' Civil Statutes.

[3] We are of the opinion that, as a matter of law, the First State Bank of Larned, Kan., under the pleadings and the evidence in this case, at no time had any cause of action against appellant, either alone or jointly with any other person, for the reason that neither appellant nor any other person, corporation, or firm having any authority to represent him had any dealings with the First State Bank of Larned, Kan., referring to the transactions out of which said bank parted with the title and possession of the money covered by the $8,850 check.

[4] We are also of the opinion that, as a matter of law, under the pleadings and evidence in this case, the legal and equitable title to the funds arising from said $8,850 check passed to McGaughey when said check was paid, subject only to the right of said bank to recover from McGaughey, as a result of mistake, an amount equal to the amount paid to McGaughey by said bank under mistake; and that the only theory under which appellant was liable at any time to any one for said $650, if it were conclusively shown that he had no right to the $650 paid him, or for his benefit, would result in the liability of appellant; Penick &

Hughes or Penick-Hughes Company being originally liable to McGaughey personally for moneys paid by him under mistake on his part.

The record showing conclusively, as we view it, that the only cause of action that McGaughey or his estate ever had against appellant was barred by the statute of limitations before this suit was filed, that it was never revived or renewed in writing, as required by law, and that appellant had pleaded and conclusively proven limitation as a bar to such claim, the judgment of the court below will be reversed, and judgment will be rendered for appellant; and it is so ordered.

PRESLER, J., not sitting.