## J. M. & J. D. RENTFROW v. LANCASTER & TURNER.

### No. 1840.

1. **Verdict—Certainty.**—A finding by the jury in a claim for wrongful attachment, assessing the damages occasioned thereby at "the difference between what the attached cotton brings when sold and its value at 7½ cents per pound," without fixing the number of pounds, is too indefinite to support a verdict for any certain sum.

2. **Attachment—Remedy—Parties.**—One whose property has been wrongfully appropriated in satisfaction of attachment against him, has an adequate remedy against the officer, only one suit being necessary, although the property may have been taken under several writs, and it is therefore not necessary to his protection that the plaintiffs in the several attachment suits should all be joined as parties in any one of such suits.

3. **Priority of Lien—Mortgage and Attachment.**—A party defendant in a suit having a mortgage on property of his codefendant attached therein, has the right to have his mortgage adjudicated and the proceeds of the attached property first applied to its satisfaction if it be held a superior lien.

4. **Guaranty of Debt of Another—Statute of Frauds.**—A verbal promise to "see paid" a debt of another, although made at the inception of the debt, will ordinarily render the promisor liable therefor as surety, and not as a principal.

5. **Attachment—Landlord's Interest in Crops.**—Ordinarily a landlord's interest in the crops of his tenant which are grown on the shares is an attachable interest, not a mere lien.

APPEAL from County Court of Hood. Tried below before Hon. G. W. RIDDLE.

*Thos. T. Ewell, Ben M. Terrell,* and *John J. Hiner,* for appellants.

1. A mortgagee may assert his rights in a suit by an attaching creditor when he is made a party defendant and seeks to have an accounting by bringing in all persons claiming any interest in the mortgaged property, without the necessity of a separate suit. Rev. Stats., art. 1209; Story's Eq. Pl., secs. 72, 1526; 2 Ct. App. C. C., secs. 216, 228; Sayles' Pl. and Prac., secs. 279, 280; Cook v. Pollard, 8 S. W. Rep., 512.

2. The issues as to whether J. D. Rentfrow, in requesting plaintiffs' services to his brother, rendered himself liable as requesting such services for his own benefit, or merely acted as a messenger in behalf of his brother, and only promised to see the debt paid in case of his brother's death, called for no such abstract rules as given by the court, and same were misleading. Rev. Stats., art. 2464; 2 Willson's C. C., sec. 436; 20 Texas, 329; 25 Texas Supp., 91; Warren v. Smith, 24 Texas, 484; 35 Texas, 631; Hill v. Frost, 59 Texas, 25; 2 Whart. on Ev., secs. 880, 881; 2 Pars. on Con., 304; 1 W. & W. C. C., sec. 908.

3. A landlord's lien upon the crop of his tenant is not such an interest as is subject to the levy of an attachment, and a levy on the crop in possession of the tenant for the landlord's debt is void, and therefore constitutes no lien which can be foreclosed. 65 Texas, 680; 1 Am. and Eng. Encyc. of Law, 914, 915.

HEAD, ASSOCIATE JUSTICE.—Appellees, who are partners in the practice of medicine, sued appellants, who are adult brothers, upon an account for services rendered J. M. Rentfrow. To show a cause of action against J. D. Rentfrow, appellee Lancaster testified: "On about the 2nd day of July, 1893, J. D. Rentfrow came after me at night to go and see his brother J. M. Rentfrow, who lives about seven miles from Granbury. He told me his brother had been wounded, and wanted me to go and see him. I was a little slow in getting ready, and he told me to hurry up, that he would see that I got my pay for waiting on his brother.  * * *  During the time I was waiting on J. M. Rentfrow, the defendant J. D. Rentfrow told me as many as two or three times that he wanted me to do all I could for his brother, and that he, J. D. Rentfrow, would see that I got my pay.  * * * J. D. Rentfrow did not agree in writing to pay this debt.  * * * His promise to me was verbal. He told me a few days after his brother was wounded, that if J. M. Rentfrow died he would take charge of his affairs and see that I was paid."

An attachment was issued and levied upon J. M. Rentfrow's interest in thirty acres of cotton one Kelly was cultivating "upon the shares," Rentfrow and his sister Addie furnishing the land and stock, and to get one-half of the crop. It was also levied upon his interest in twenty acres of cotton Rentfrow and his sister were cultivating together upon their own land. J. D. Rentfrow pleaded the statute of frauds in bar of any personal liability claimed against him. Also, that a number of other attachments had been levied upon this cotton as the property of J. M. Rentfrow, but that prior to any of them the latter had executed to him a mortgage thereon to secure a debt for $386.50, and after such levies had made a direct conveyance to him of the cotton and all rights of action for damages thereto growing out of the levies, and he asked that the plaintiffs in all these attachment suits be made parties herein, and he be given the proper judgment for the conversion of the mortgaged property, and adjusting the rights of the parties in reference thereto. Appellees replied, attacking this mortgage as fraudulent. Special exceptions were sustained to all of this answer except the plea of the statute of frauds, and upon a trial before a jury the following verdict was returned:

"1. We the jury find that J. D. Rentfrow and J. M. Rentfrow are jointly liable for the two hundred and fifty dollars ($250) for professional services rendered J. M. Rentfrow by Drs. Lancaster and Turner. A deduction of twenty-nine and seventy-five cents ($29.75) being made, leaves a balance of two hundred and twenty dollars and twenty-five cents ($220.25) due.

"2. Further, in case of the attachment, we find for the defendant J. M. Rentfrow, and assess the damages to be the difference between what the attached cotton of J. M. Rentfrow brings when sold, and the value of the cotton at 7½ cents per pound.   "R. S. WHITEHEAD, Foreman."

"We the jury further find, that the attachment lien be not fore-closed.                                    "R. S. WHITEHEAD, Foreman."

Upon this verdict the court rendered judgment in favor of appellees for the $220.25, and foreclosing the attachment lien upon the cotton, and further adjudged: "That the defendant J. M. Rentfrow do have and recover of and from the plaintiffs Lancaster and Turner the difference between what the said above described cotton of the said J. M. Rentfrow brings when sold and the value of said cotton at 7½ cents per pound, and said sum shall be a credit upon the amount adjudged in this case in favor of the plaintiffs."

That this judgment is fundamentally erroneous, in so far as it recognizes and undertakes to enforce the verdict returned by the jury as an adjudication of the amount of damages appellant J. M. Rentfrow is entitled to recover by reason of the wrongful levy of the attachment, we think is manifest. It nowhere fixes the number of pounds of cotton upon which the calculation is to be made by the officer, nor furnishes other data by which this could be done.

In Darden v. Mathews, 22 Texas, 326, it is said: "In actions sounding in damages, and in actions where damages may be recovered incidentally, and in all actions of whatever character, where dates, amounts, and the like, are not usually intended or understood to be stated accurately, and need not be proved as stated, there should not only be the general finding for the plaintiff, but also a special finding as to the amount." We believe this can be stated to be an almost universal rule. The jury having found that the attachment was wrongful, should have fixed the amount of damage thus caused, which would be the value of the property levied on, with legal interest, leaving it for the court to make the proper order of foreclosure and application of the proceeds realized at the sale. Blum v. Stein, 68 Texas, 608.

The right of the court to foreclose this attachment after the jury had expressly found that this was not to be done, may also be seriously questioned. Akin v. Jefferson, 65 Texas, 141. The statute does not contemplate that, in ordinary cases, the question of the foreclosure of the attachment lien will be submitted to the jury, but requires the court to enter this order where the finding is in favor of the attaching creditor as to the debt. Rev. Stats., art. 180; Moss v. Katz & Mayer, 69 Texas, 411.

In this case, however, J. M. Rentfrow pleaded that his sister owned a one-half interest in the cotton, and asked that it be exempted from the attachment, and the court instructed the jury not to include her interest, if they found she had any. No objection was made to Rentfrow's representing his sister in this way, and under these circumstances, can it be said that the court had the right to ignore the verdict finding against the foreclosure? The question is not presented in the briefs, and we leave it undecided; but will add, that unless Addie Rentfrow should in some proper manner become a party to this suit,

her interest in the attached property should be ignored, and she left to enforce her rights against the officer who levied the writ and the attaching plaintiffs in a separate suit.

We are not prepared to hold that the court erred in sustaining exceptions to that part of J. D. Rentfrow's answer which sought to make the plaintiffs in the other attachment suits parties herein. If his property has been wrongfully appropriated to the satisfaction of attachments against J. M. Rentfrow, he has an adequate remedy against the officer, only one suit being necessary, although the property may have been taken under several writs. Thomas v. Chapman, 62 Texas, 193. In that case it was, however, held that the officer would not be allowed to make his several indemnitors parties.

But we think there was error in striking out that part of this answer which sought to have adjudicated the alleged priority of J. D. Rentfrow's mortgage over appellees' attachment. It has been expressly held that a landlord can intervene in an attachment suit and have the proceeds of the attached property first applied to his superior lien, and we see no reason why the same rule should not apply to a prior mortgage creditor. Sullivan & Co. v. Cleveland, 62 Texas, 681. If such a lien holder has the right to *intervene* and have his rights adjudicated, a fortiori should he be allowed to do this in a suit to which he is already a party.

Upon the issue raised by the plea of the statute of frauds, the court, after properly instructing the jury that if J. D. Rentfrow's undertaking was only as security for his brother he would not be liable, his promise not being in writing, added: "But if J. D. Rentfrow originally undertook or agreed to become liable for any sum due plaintiffs by said J. M. Rentfrow, that is to say, if J. D. Rentfrow primarily agreed to see the debt paid or undertook to become originally liable, and it was agreed to between himself and the plaintiff J. R. Lancaster, then and in that event he would be equally liable with his brother."

We think that in view of the evidence herein before copied, the words "primarily agreed to see the debt paid," as used in this charge, were objectionable, and in all probability misled the jury. To render J. D. Rentfrow liable to appellees, he must have made the debt his own, in consideration of the services to be rendered his brother, and not simply become security for the latter. An agreement "to see" paid a claim for services rendered another, ordinarily implies security.

We are of opinion that J. M. Rentfrow's interest in the crops being raised upon shares by Kelly and Shelton was subject to attachment, although there are expressions used in the opinion in Railway v. Bayliss, 62 Texas, 570, which might lead to the conclusion that in this State, under contracts of this kind, the landlord does not acquire an interest in the crops themselves, but only a lien thereon to secure the delivery of his rents. We fully agree with that decision in holding that a tenant who has exclusive possession of the crop under a contract of that kind can recover the whole damage caused thereto by a tres-

pass thereon, but we are of opinion that the landlord ordinarily has an interest in the crop, and not a mere lien thereon. We so held in an oral opinion by Stephens, J., in Railway v. Adams, decided at the present term.

Our views upon this question are so aptly expressed in 1 Freeman on Executions, second edition, section 113, that we copy at length therefrom: "Where crops have been raised by one person on the land of another, under a lease or contract by which he and the owner of the land share in such crops, there is some doubt concerning the nature of the interests of the parties, and therefore some difficulty in determining when and against whom they are subject to execution. They are in some instances subject to execution against the landowner only, in other instances against the cropper only, and in still other instances against both the landowner and the cropper. In by far the greater number of cases the contract or leasing is such that both parties at all times have an interest in the crops prior to their division as tenants in common thereof; and where this is so, the interest of each is necessarily subject to an execution against him. The question is one of intention, to be determined from the whole contract. If the contract shows that it was the intention of the parties to divide the specific products of the premises, the intention would seem to be manifest that each should at all times prior to the division have a title to his moiety of such products. If, on the other hand, the lease or contract contains words importing a present demise and a reservation of a portion of the crop as rent, the parties seem to stand toward each other in the relation of debtor and creditor, the debt being payable in produce; and the tenant is the sole owner of such produce until the part due the landlord is segregated and paid to him. Where this is the case, the crops are subject to an execution against the tenant, but to none against the landlord. The leasing or contract, taken as a whole, may in substance provide that the cropper give his services in consideration of receiving a portion of the crop. In this event he is regarded as having possession of the land merely for the purpose of cultivating and harvesting his crop; the obligation of the landlord to him is in the nature of a debt merely, and he has no title to any part of the crop until its segregation and payment to him. His interest is not subject to execution. The owner of the land may always, by apt words in his contract or lease, provide that the title to all the crops raised shall remain in him until the tenant's or cropper's part shall be segregated and delivered to him; and where such words are employed, no one other than the landowner has any interest in the crops subject to seizure and sale under execution. The parties may also make their relation that of partners, in which event their property will be subject to execution as other partnership property."

In view of another trial, the other assignments need not be discussed.

*Reversed and remanded.*

Delivered April 24, 1895.