## JOHNSON v. TINDALL.

(Court of Civil Appeals of Texas. Galveston. Nov. 28, 1913. Rehearing Denied Dec. 18, 1913.)

1. FRAUDS, STATUTE OF (§ 152*)—NECESSITY OF PLEADING.

The defense of the statute of frauds is available under a general denial if interposed by seasonable objection to testimony.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 363-366, 371, 372; Dec. Dig. § 152.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

2. TRIAL (§ 89*)—CONTRACT.

Plaintiff, who sued defendant and the latter's son-in-law for medical services rendered to the son-in-law's wife, testified that defendant orally agreed to pay for the services, but on cross-examination qualified his statement by testimony that defendant agreed to pay only in case his son-in-law did not. *Held* that, as defendant's promise to pay was a collateral one, it was void under the statute of frauds (Rev. Civ. St. 1911, art. 3965), and plaintiff's testimony was incompetent and should have been excluded on motion made at the close of his cross-examination.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 228–234; Dec. Dig. § 89.*]

3. TRIAL (§ 95*)—RECEPTION OF EVIDENCE—OBJECTIONS.

In an action to recover for medical services rendered defendant's daughter, plaintiff's collector testified that defendant told him to get all he could out of the daughter's husband and that he would pay the balance. It was objected to on the ground that it only showed a promise made after the services had been performed and, not being in writing, was not binding on defendant. *Held* that, while the testimony was inadmissible because tending to show an oral contract in contravention of the statute of frauds, the court properly overruled the objection made.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 250; Dec. Dig. § 95.*]

4. MALICIOUS PROSECUTION (§ 71*)—ACTIONS FOR WRONGFUL ATTACHMENT — PUNITIVE DAMAGES.

In an action for compensation for medical services begun by attachment, where defendant claimed damages for malicious attachment, the evidence *held* to raise the issue of punitive damages.

[Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. §§ 160–167; Dec. Dig. § 71.*]

5. MALICIOUS PROSECUTION (§ 55*)—WRONGFUL ATTACHMENT—PLEADING.

In an action begun by attachment, where defendant's plea in reconvention did not in terms allege that the attachment was sued out without probable cause but alleged facts showing that it was, such plea is sufficient to support a recovery of exemplary damages.

[Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. §§ 106–110; Dec. Dig. § 55.*]

6. JUSTICES OF THE PEACE (§ 173*)—APPEAL—JUDGMENT AGREEMENT.

In an action begun in justice court by attachment, where defendant claimed damages for wrongful attachment, the parties entered into an agreement reciting that, since whichever party lost would appeal, the attachment should be quashed, and that the court should enter judgment as he thought proper on the facts, which was incorporated into the judgment. *Held*, that the agreement did not preclude defendant, after adverse judgment, from asserting on appeal his claim for damages for wrongful attachment.

[Ed. Note.—For other cases, see Justices of the Peace, Cent. Dig. §§ 660–664; Dec. Dig. · § 173.*]

Appeal from Nacogdoches County Court; Geo. F. Ingraham, Judge.

Action by C. H. Tindall against Calvin Johnson and another, begun in Justice Court and appealed by defendant to the County Court. From a judgment for plaintiff, the named defendant appeals. Reversed and remanded.

Blount & Strong and J. M. Marshall, all of Nacogdoches, for appellant. V. E. Middlebrook, of Nacogdoches, for appellee.

PLEASANTS, C. J. This suit was brought by appellee against the appellant and one Will Allen to recover the sum of $117.50, the value of professional services and medicines rendered and furnished by appellee, a physician, to the wife of said Allen, who is the daughter of appellant. At the time of filing the suit in the justice court, the plaintiff procured the issuance of an attachment against the property of both defendants. In his affidavit for attachment plaintiff swore: "That the said defendants, Calvin · Johnson and Will Allen, secrete themselves so that the ordinary process of law cannot be served upon them. * * * And that plaintiff will probably lose his debt unless such attachment is issued." The attachment was levied upon two mules belonging to appellant, which he replevied. Appellant answered in the justice court by a sworn denial of plaintiff's claim against him and by a plea in reconvention sought to recover of plaintiff $200 damages for suing out the attachment against him, which he averred was wrongfully, willfully, and maliciously sued out without probable cause. Upon a trial in justice court the following judgment was rendered: "This day this cause came on to be heard upon the regular order of the call of the docket, whereupon came the plaintiff, C. H. Tindall, both in person and by counsel, and also came Calvin Johnson, in person and by counsel, and the defendant Will Allen, though duly called and having been duly cited, answered not but wholly made default herein. Wherefore the plaintiff introduced his evidence, and the court, after hearing the evidence, believes the plaintiff ought to recover against the defendant Will Allen the full amount sued for. It is therefore ordered, adjudged, and decreed that the plaintiff, C. H. Tindall, do have and recover of and from the defendant Will Allen the sum of $117.50, together with 6 per cent. per annum interest thereon from the 1st day of January, 1910, and all costs in this behalf expended, for all of which let execution issue. Then came on to be heard the case as between C. H. Tindall and the defendant Calvin Johnson. The defendant demanded a jury. Both sides announced ready for trial, and six good and lawful jurors were impaneled, to wit, L. T. Blake, foreman, and five others, who, after hearing the evidence and argument of counsel, reported to the court that it was impossible for them to agree, and, having considered of their verdict a reasonable time, they were discharged by the court and a mistrial entered. Then came the 'attorneys for both the plaintiff and defendant and announced to the court that it was certain that, whichever party to this suit lost in this court, that same party would appeal the case

to the county court, and further announced to the court that it was agreed by and between the plaintiff and defendant that the affidavit and bond and the writ of attachment sued out in this case should be quashed and held for naught, and that the court might enter such judgment from the facts of the case as he thought proper. It is therefore considered by the court, and it is so ordered, adjudged, and decreed, that the affidavit and bond for attachment, the writ of attachment with the agreement of the parties, C. H. Tindall and Calvin Johnson, is in all things held for naught and quashed, and therefore that the defendant Calvin Johnson take nothing by his plea for damages. It is the further order of the court that the plaintiff take nothing by his suit as against Calvin Johnson, and that said Calvin Johnson go hence without day, and that he recover of and from the plaintiff, C. H. Tindall, all costs in this behalf expended. The plaintiff then presented to the court his oral motion for a new trial, which is in all things overruled by the court. Whereupon plaintiff gave notice of appeal to the county court of Nacogdoches county, Tex."

The trial in the county court with a jury resulted in a verdict and judgment in favor of plaintiff against the defendant Allen for $117.50 and against the appellant for said sum, less the sum of $2.50, which the jury found to be the actual damages sustained by appellant because of the wrongful suing out of the attachment.

[1, 2] The plaintiff testified: "I was called to see Will Allen's wife on or about October 13, 1909. One of Calvin Johnson's boys came after me. Will Allen's wife was then at her father's, Calvin Johnson. When I arrived at Calvin Johnson's house, I sent for Calvin to come to the house, and when he came I advised him that an operation was necessary on Will Allen's wife, and told him I would not perform the operation unless he would agree to pay for the same, and he promised me that he would pay for the operation. There was no one present when this conversation took place except myself, Calvin Johnson, and Calvin Johnson's wife. I afterwards performed the operation on Will Allen's wife, for which I charged Calvin Johnson $100, and made some other visits to her and furnished her medicine, making the total amount, including the operation, $117.50. This amount is due me by Calvin Johnson, and he has never paid me anything on it." On cross-examination he further testified: "The substance of the conversation that I had with Calvin Johnson at the time I sent for him to come up to the house, and before the operation was performed, and before I did any medical service for Will Allen's wife, was that I told Calvin Johnson that I would not do any work or perform the operation on Will Allen's wife and look to Will Allen for the pay because he was a transient negro, going from one sawmill to another, and he (Calvin Johnson) told me to go ahead and

perform the operation, and if Will Allen did not pay for it he would. Calvin Johnson never did at any time promise in writing to pay this debt." Appellant objected to this testimony and asked the court to withdraw it from the jury because it showed that "the defendant Calvin Johnson did not bind himself primarily to pay said debt but only to become security therefor, and said promise, being verbal and not in writing, would not bind the defendant Calvin Johnson legally to pay said debt." The motion to have this testimony withdrawn from the jury should have been sustained. It is well settled that the defense of the statute of frauds is available under a general denial if interposed by seasonable objection to testimony. International Harvester Co. v. Campbell, 43 Tex. Civ. App. 421, 96 S. W. 93. This testimony conclusively shows that appellant's promise to pay for the services rendered by appellee to his daughter was a collateral and not an original undertaking. The appellee's statement on cross-examination that appellant promised to pay for the operation "if Will Allen did not" is not in conflict with his statement on direct examination that appellant "promised that he would pay for the operation" but explains said statement by showing the form of the promise and the condition attached thereto. Taking his testimony as a whole, there is no issue as to the character of the promise and undertaking of the appellant. He only became security for the payment of the debt by Will Allen, and his promise, not being in writing, is unenforceable. Article 3965, Revised Statutes 1911; Rentfro v. Lancaster, 10 Tex. Civ. App. 321, 31 S. W. 229; Loftus v. Ivy, 14 Tex. Civ. App. 701, 37 S. W. 766; Nichols v. Dixon, 85 S. W. 1051.

[3] Ollie Strode, a witness for plaintiff, testified that he had plaintiff's account for collection and saw the appellant in regard to it. The witness was then asked by plaintiff's counsel what appellant said to him as to whether or not he would pay the account. To this question the witness answered: "He told me to get all I could out of Will Allen, and he would pay the balance." Appellant objected to this question and answer on the ground, in substance, that they only showed a promise on the part of appellant to pay plaintiff's claim made after the services had been performed and, not being in writing, was not binding on appellant. This objection was overruled, and the testimony admitted. Appellant at the close of the testimony asked the court to instruct the jury that they could not consider the above testimony of the witness Strode as evidence of liability on the part of appellant for the payment of plaintiff's account. This charge was refused. We think this testimony was subject to the objection that it only showed a promise on the part of appellant to pay the debt of the defendant Will Allen, and such promise, not being in writing, created no liability on the

part of appellant. This objection, however, was not made to its introduction. The fact that the promise to pay was made after the service was performed might render it void for want of consideration but would not make such promise obnoxious to the provisions of the statute of frauds, and the court did not err in refusing to exclude the testimony on the objection made.

[4] On the issue of appellant's claim for damages for wrongfully suing out the attachment against him, he testified: "On the 10th day of October, 1911, when Dr. Tindall (appellee) made the affidavit for attachment in this case, I was either in the town of Appleby or on my way from home to said place. The writ of attachment was levied on two mules that I was driving in the town of Appleby. These mules were at that time reasonably worth on the market $400. At that time, and at no other time during my life, have I secreted myself in any manner to avoid the service of the ordinary process of law. On the 10th day of October, 1911, or any time just prior thereto, covering a period of several months, I had not been away from home except to go to Appleby, where Dr. Tindall lives, or to come to Nacogdoches, about 12 miles away. At the time Dr. Tindall made this affidavit for attachment, and at the time the writ of attachment was levied, I owned in my own name, outside of my homestead, 273 acres of land, most of which was in cultivation. The reasonable market value of this land was $10 per acre. My deed to this land was on record at the time the affidavit for attachment was made by Dr. Tindall in the county clerk's office of Nacogdoches county, Tex. I also owned on the 10th day of October, 1911, eight head of mules and horses, and the six head outside of the two mules levied upon were reasonably worth on the market $800. I also owned and had on hand at the time the affidavit was made for this attachment, to wit, on October 10, 1911, 13 bales of cotton, which was reasonably worth on the market $50 per bale. There was no lien or incumbrance of any kind on the 273 acres of land or on the stock or cotton."

On this issue appellee testified as follows: "Calvin Johnson lives about three miles from Appleby (the place where I live), and we both lived that close together at the same places on the 10th day of October, 1911, when I made the affidavit for attachment in this suit against Calvin Johnson. I was sworn to that affidavit by the justice of the peace on the 10th day of October, 1911, and I swore in that affidavit that 'Calvin Johnson and Will Allen secrete themselves so that the ordinary process of law cannot be served upon them.' At the time I swore to this statement in the affidavit, I had made no investigation with reference to the whereabouts of Calvin Johnson to determine whether or not this state-

ment was true. I had no information from any source upon which to base this statement. I did not know at the time I made this affidavit whether Calvin Johnson was then at home, just three miles away from Appleby, or whether he was then in the town of Appleby. I did see Calvin Johnson in the town of Appleby within an hour or so after I made this affidavit. The writ of attachment was levied on two mules of Calvin Johnson, in the town of Appleby, within an hour after I made the affidavit, and Calvin Johnson himself was driving the mules. I had no reason whatever to believe, at the time I made this affidavit, that Calvin Johnson was secreting himself to avoid the ordinary process of law. I further swore in the affidavit for attachment that I (plaintiff) 'would probably lose my debt unless such attachment issued.' I did not know at that time how much land Calvin Johnson had subject to execution and had made no investigation to determine this. I did not know whether he had six head of horses subject to execution or not, and made no investigation to find out. I did not know whether he had 13 bales of cotton on hand at that time subject to execution or not, and made no investigation to find out. I did know that Calvin Johnson was well fixed and owned considerable property. I did not go to the real estate records of this county to see how much more."

The evidence shows that appellant sustained actual damages by reason of the levy of the attachment, and the jury found a verdict in his favor for such damages in the sum of $2.50. The court in his charge only submitted the issue of actual damages and refused special charges requested by the appellant submitting the issue of exemplary damages. The evidence before set out clearly raises the issue of exemplary damages, and the court should have submitted that issue to the jury. Biering v. Bank, 69 Tex. 599, 7 S. W. 90; Parks v. Young, 75 Tex. 278, 12 S. W. 986; Willis Bro. v. McNatt, 75 Tex. 69, 12 S. W. 478; Farrar v. Talley, 68 Tex. 352, 4 S. W. 558.

[5] Appellant's plea in reconvention filed in the county court does not allege in terms that the attachment was sued out "without probable cause," but it alleges facts which, if true, show that no probable cause existed, and is sufficient to entitle him to recover exemplary damages.

[6] The agreement recited in the justice court judgment did not preclude appellant from asserting his claim for damages on the trial in the county court.

For the errors indicated, the judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.