HEIN v. JOHN FINNIGAN CO.

(Court of Civil Appeals of Texas. San Antonio. Jan. 14, 1914. Rehearing Denied Feb. 4, 1914.)

FRAUDS, STATUTE OF (§ 23*)—AGREEMENTS OF GUARANTEE—NECESSITY OF WRITING.

An oral agreement by father to guarantee advances made to his son, not to exceed $1,000, is unenforceable as being within the statute of frauds (Rev. Civ. St. 1911, art. 3965, subd. 2), providing that such agreement must be in writing.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 18, 19; Dec. Dig. § 23.*]

Appeal from District Court, Webb County; J. F. Mullally, Judge.

Action by the John Finnigan Company

against Henry Hein, Sr., and Henry Hein, Jr. From a judgment for plaintiff, defendant Henry Hein, Sr., appeals. Reversed and rendered as to Henry Hein, Sr., but affirmed as to Henry Hein, Jr.

A. Winslow, of Laredo, for appellant. Greer & Hamilton, of Laredo, for appellee.

CARL, J. Appellee, John Finnigan Company, brought this suit against appellant, Henry Hein, Sr., and Henry Hein, Jr. The petition charges that on or about July 2, 1909, plaintiff, at the special instance and request of the defendants, advanced and delivered to defendant Henry Hein, Jr., at the several times specified in the attached account, goods, etc., and that a balance of $427.95 remained due and unpaid; that defendant Henry Hein, Sr., requested that plaintiff give a credit or make advances to Henry Hein, Jr., not to exceed $1,000, in excess of payments and credits; and that said Henry Hein, Sr., agreed to stand good for such credits and advances to the extent of $1,000. Appellant answered by general demurrer and general denial and among other things set up two years' limitation and further pleaded the statute of frauds in bar of the action as to him.

The appellee thereupon filed a supplemental petition in which it admitted that it had no written contract or evidence that Henry Hein, Sr., agreed to become responsible for his son, Henry Hein, Jr.'s, debt to the extent of $1,000, but "plaintiff avers that John T. Murphy, father of plaintiff's present local manager, his said father being now deceased, and defendant Henry Hein, Sr., had had business dealings together for more than 15 years before plaintiff and defendant Henry Hein, Jr., began their business dealings; that said business dealing between plaintiff, under the local management of John T. Murphy, deceased, was carried on in plaintiff's name as creditor and defendant Henry Hein, Sr., as debtor; that said defendant Henry Hein, Sr., was then engaged in the butchering business, wherein he had many hides to dispose of, and contracted with plaintiff to sell the same to plaintiff at their market value when delivered, and in said business plaintiff for more than 15 years, under the management of said John T. Murphy, deceased, made cash advances to said Henry Hein, Sr., in anticipation of and for the purpose of securing the purchase of said hides; that after the death of plaintiff's local manager, John T. Murphy, his son, Harris Murphy, the present local manager of plaintiff, continued such business dealings with said Henry Hein, Sr., until or about the 1st day of July, 1909, when said defendant apprised the local manager of this plaintiff that he was going to turn over his butchering business to his son (his codefendant herein) and retire therefrom, and said defendant requested plaintiff, through its said local manager, to continue the business with his son as it had been previously conducted with said defendant Henry Hein, Sr. Whereupon plaintiff's manager told and informed said defendant that, if he (Henry Hein, Sr.) would guarantee plaintiff in the repayment of its advances from said defendant's son to plaintiff from time to time as such balances accrued, plaintiff would continue the business with his son as it had previously done with said defendant. Defendant replied he would not agree to guarantee and stand for more than $1,000 of such advances as they should accrue, but that he would stand good for and guarantee said advances to the extent of said $1,000 as the account ran; that both parties, including the defendant Henry Hein, Jr., well understood and knew that the business was to be a continuous one, and at reasonable times, to say, about once a month, the delivery of hides from defendant Henry Hein, Jr., would reduce the indebtedness from time to time, sometimes so as to nearly balance the account, and at others having a considerable balance due plaintiff, and the object of Henry Hein, Sr., in limiting his liability to $1,000 was that he should not be held liable beyond that amount at any one time for any balance so due."

The plaintiff recovered, as prayed, the sum of $427.95, and Henry Hein, Sr., appeals.

This appeal is predicated upon two propositions, viz.: (1) That the promise of Henry Hein, Sr., to guarantee the debt of his son to the extent of $1,000, if made, was within the statute of frauds; and (2) that the debt sued on was barred by the two years' statute of limitation as to appellant. The first item of the account is dated July 2, 1909, and the last one is December 30, 1911. Suit was filed March 21, 1912, and the account sued on shows that more than the balance of $427.95 sued for was furnished within two years before the filing of the suit.

We shall first see if the appellee's suit as to appellant falls within the statute of frauds (article 3965 of the Revised Civil Statutes), section 2 of which is as follows: "To charge any person upon a promise to answer for the debt, default or miscarriage of another." It will be observed that appellee alleged in its supplemental petition that "plaintiff's manager told and informed said defendant that if he (Henry Hein, Sr.) would guarantee plaintiff in the payment of its advances," etc. "Defendant replied he would not agree to guarantee and stand for more than $1,000 of such advances as they should accrue," etc.

The authorities are in somewhat of a nebulous state as to just what does and what does not come within the statute. The case of Nichols v. Dixon, 85 S. W. 1051, Id., 99 Tex. 263, 89 S. W. 765, holds that an oral promise of the owner of a building to see that a materialman was paid for his material was a promise to become liable for the debt of another and within the statute. And so in Texas Southern Railway Company v. Pyle, 83 S.

W. 234, the verbal promise of the president of the railway company to pay an indebtedness owing by the company was unenforceable under the statute of frauds.

Upon a somewhat similar state of facts, in Jones Lumber Co. v. Villegas, 8 Tex. Civ. App. 669, 28 S. W. 560, this court, speaking through Mr. Justice Fly, said: "We are of the opinion that no cause of action is shown as to Villegas. * * * There was no consideration whatever for the promise to notify appellant; and, if Villegas had made a direct positive verbal promise to have paid the debt of Mas to appellant, the promise, as being obnoxious to the statute of frauds, could not have been enforced." In that case Villegas had $3,700 that would become due to Mas on the completion of the house and promised appellant he would not pay it out before notifying the lumber company. The lumber had not been delivered. The court says: "It will be seen from the above exceptions to the rule that the promise made must be one which would create a contract that would form the basis of a suit at law. The promise in this case was not of that character, and, as before intimated, would not have been such had Villegas promised to pay the debt outright." See, also, Loftus v. Ivy, 14 Tex. Civ. App. 701, 37 S. W. 766, wherein it is held that a verbal promise to pay for certain work, if another does not, is within the statute.

Cases that have given rise to considerable confusion are those in which there is a personal consideration to the one making the promise, and where it is an original undertaking and primary obligation to pay on part of the one making the promise. For instance, in American Brewing Association v. Gossett, 107 S. W. 357, the association was held liable because its promise to be responsible for the debt upon the fixtures was supported by a valuable consideration in that it was agreed that its beer would be sold, and without such promise it would not be handled, and because it was made a primary obligation of the association.

In the case cited by appellee (Hamilton v. Cushman Company, 15 Tex. Civ. App. 338, 39 S. W. 641), the petition charged: "That plaintiffs refused to credit the other defendant, and that Hamilton requested them to furnish the articles, which was done upon his credit. This showed an original undertaking on his part, which was not within the statute of frauds." So in the Nixon v. Jacobs Case, 22 Tex. Civ. App. 97, 53 S. W. 595, the pleadings and evidence showed that it was an original undertaking of liability on Nixon's part to be held primarily liable.

Chief Justice Conner says: "To take the case out of the statute, the oral promise must be an original one. The merchandise must have been advanced to the Mexicans upon the faith of a promise on appellant's part to himself pay for them, and not merely to 'secure the payments,' as authorized by the court's charge." Porter v. Norman, 136 S. W. 1173, citing Rentfrow v. Lancaster, 10 Tex. Civ. App. 321, 31 S. W. 229; Dabney v. Conley, 65 S. W. 1124.

It was held in Penick v. Castles, 144 S. W. 297, that a parol promise by defendant to pay his pro rata of any recovery by the bank in its action against the intestate was not enforceable because within the statute of frauds.

The case of R. B. Spencer & Co. et al. v. Nolle & Co., 143 S. W. 991, shows that there was ample consideration, and that the debt became a primary obligation, because the lumber, etc., was on the ground, and suit was about to be brought to recover the goods. In that condition of affairs, the promise to pay the debt was to prevent a suit and to keep the goods.

But, while there may be some confusion on this subject in our Courts of Civil Appeals, the case at bar is covered by the decision by our Supreme Court in the case of Brown v. Farmers' & Merchants' Nat'l Bank, 88 Tex. 265, 31 S. W. 285, 33 L. R. A. 359. W. O. Brown was in business, and the cashier of the bank, the petition and proof showed, refused to extend further credit, because he had given a deed of trust on his property in which his uncle, E. Y. Brown, was preferred. But it was claimed by the bank, and the proof seems to bear out the claim, that E. Y. Brown made an oral promise that, if the bank would continue to accommodate W. O. Brown, he (E. Y. Brown) would see that such advances were made all right, and that he would collect nothing under the trust deed till the bank should be paid in full. The promise was for future advances. Judge Denman, writing the court's opinion, says: "We are of opinion that the promise of the minor, W. O. Brown, was not void, and that the promise of E. Y. Brown to answer for his indebtedness to the bank was within the statute of frauds, and no action can be maintained thereon because not in writing."

It is not necessary to pass upon the question of limitation.

The above opinion clearly controls the one before this court. The pleadings and evidence both show that Henry Hein, Sr., only undertook to guarantee the payment of his son's debt; and, since this is true, it is, in the light of the decisions, a verbal undertaking to "answer for the debt, default, or miscarriage of another" and within the statute of frauds.

It therefore becomes our duty to reverse and render this cause in favor of Henry Hein, Sr., but as to Henry Hein, Jr., the judgment of the district court will be affirmed.