I. P. and G. M. Cowan, composing the partnership firm of Cowan Bros., were engaged in the mercantile business in the town of Bluffdale, in Erath county; their stock in trade consisting of dry goods and groceries. While so engaged they purchased from the Rhome Milling Company flour, meal, and chops. The account held against them by the milling company showing a balance due of $246.95 was transferred to the City National Bank of Decatur by the milling company.
This suit was instituted by the bank against Cowan Bros., I. W. Williams, and the Rhome Milling Company. In plaintiff's original petition the alleged liability of the Rhome Milling Company was that of guarantor, while the cause of action alleged against Williams consisted in allegations that the flour, meal, and chops purchased by Cowan Bros. from the milling company and covered by the account sued on was sold to Williams by Cowan Bros. in violation of the bulk sales law of the state, and, further, that after said purchase Williams, for a valuable consideration, promised the milling company to pay said account.
In his answer, among other defenses, Williams pleaded that, if he promised to pay the account, there was no consideration to support such promise, that the promise was in parol, and, being a promise to answer for the debt of Cowan Bros., was in contravention of the statute of frauds, and therefore he was not liable thereon. By supplemental petition the plaintiff alleged that the purchase of the goods from Cowan Bros. by Williams was for the purpose of hindering, delaying, *Page 131 
and defrauding the creditors of the latter, and without any consideration paid therefor; that, after Williams thus came into possession of the goods, the agent of the milling company demanded of Williams that he surrender the same to the milling company, or else pay the account, and threatened that, if the demand was not complied with, suit would be instituted against Cowan Bros. on said account, and the goods would be levied on by writ of attachment; that Williams, in consideration that the milling company would forbear resort to such proceedings, agreed with the agent of the milling company to pay the account; that, in consideration of such agreement by Williams, the milling company refrained from the institution of such proceedings.
In reply to the supplemental petition Williams specially denied that he purchased the goods with intent to hinder, delay, or defraud the creditors of Cowan Bros., further alleging that he purchased only $76.65 worth of flour, that he purchased the same in retail in good faith and paid value therefor, and that the flour so purchased was sold to him in the ordinary course of trade; he also again invoked the statute of frauds as a defense to the alleged agreement set out in the supplemental petition.
Judgment was rendered in favor of the plaintiff against all of the defendants as prayed for for the sum of $246.95, and, from that judgment, Williams has appealed.
The court submitted the case to the jury upon special issues, three of which issues, together with the findings of the jury thereon, are as follows, to wit:
"(8) Did defendant Williams conspire or confederate with Cowan Bros., whereby any part of the property of said Cowan Bros. was received by said Williams and held and disposed of for the purpose and with the intent to hinder, delay, or defeat the creditors of said Cowan Bros.? In answering this question you will consider all the facts and circumstances in evidence before you.
"To the eighth issue we answer, `Yes.'
"(9) Did defendant Williams receive and have in his possession any of the flour and meal sold by Rhome Milling Company to Cowan Bros., and did J. W. Malone, the agent of said milling company, know that fact, and demand of said Williams that he pay the balance due on said flour and meal by Cowan Bros., or that he (Malone) would sue and attach the same for said milling company?
"To the ninth issue we answer, `Yes.'
"(10) Did said Williams agree with said Malone that he (Williams) would pay the balance due said milling company by Cowan Bros. if he (Malone) would not bring suit and attach said flour and meal then in the possession of said Williams? And in this connection state whether or not such promise, if you find the same made, was in writing or oral. In answering the foregoing question, you will consider the evidence before you and be governed thereby.
"To the tenth issue we answer, `Yes; orally."'
Appellant insists that the court erred in overruling his motion for a judgment in his favor upon the findings of the jury upon issue No. 10, as shown above, considered in connection with the uncontroverted testimony of J. W. Malone himself, several times repeated, that the only promise Williams made was that he would pay the account "if Cowan Bros. did not do so." Malone further testified relative to the promise so made to him by Williams as follows: "I relied upon this promise, and did not bring this suit, and agreed to leave the stuff with him. If he had not so promised, I would have attached the property."
It thus appears that Williams' promise to pay the debt was supported by a sufficient consideration passing from the milling company. But it further appears that his contract to pay the debt was that of guarantor only. His promise was not unconditional, but was conditioned upon the failure of Cowan Bros. to pay, and therefore was collateral. The question, then, is whether or not a valuable consideration passing from the milling company to Williams would take the case out of the statute of frauds.
Our statute of frauds (Rev.St. 1911, art. 3965) reads:
"No action shall be brought in any of the courts in any of the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith, or by some person by him thereunto lawfully authorized: * * *
"No. 2. To charge any person upon a promise to answer for the debt, default, or miscarriage of another; or. * * *"
In the suit of Hill v. Frost, 59 Tex. 25, our Supreme Court used the following language: "If the promise is merely collateral and auxiliary to the original debt, it would be nothing more than a verbal agreement to pay the debt of another, and is within the statute. The agreement to take the case out of the statute must not only be in writing, but, like any other promise binding in law, must be founded upon a sufficient consideration moving between the parties. Browne on Statute of Frauds, § 189. There is some doubt from the evidence whether there was any promise of any kind made by appellant. The utmost that can be said is that Mrs. Hill told appellee not to bother her son; that she would pay the debt on the 1st of April following. This was clearly a promise collateral to the existing liability of another, if it was a binding promise at all. In Warren v. Smith, 24 Tex. 486, 76 Am.Dec. 115, it is said, Judge Bell delivering the opinion of the court: `If the promise to answer for the debt of another is collateral only, and if the *Page 132 
riginal liability continues to subsist, the collateral promise is within the statute; but if, by the new promise, the original liability is extinguished, then the new promise is not within the statute, but is regarded as an original contract on sufficient consideration, which need not be in writing.'" To the same effect are Chauvin v. McKnight,132 S.W. 383; Starr v. Taylor, 56 S.W. 543. See, also, 2 Elliott on Contracts, § 1231.
In the case of Porter v. Norman, 136 S.W. 1173, Norman, a merchant, sought to hold Porter liable for certain goods sold to two of the latter's Mexican tenants, and, in disposing of that appeal, this court used the following language: "To take the case out of the statute, the oral promise must be an original one. The merchandise must have been advanced to the Mexicans upon the faith of a promise on appellant's part to himself pay for them, and not merely `to secure the payments,' as authorized by the court's charge. See Rentfrow v. Lancaster,10 Tex. Civ. App. 321, 31 S.W. 229; Dabney v. Conley, 65 S.W. 1124."
"Generally speaking, an oral undertaking by a person not previously liable for the purpose of securing the debt or performing the same duty for which the person for whom the undertaking is made remains liable is within the statute of frauds, and must be in writing." 20 Cyc. p. 164.
In Muller v. Riviere, 59 Tex. 640, 46 Am.Rep. 291, a surviving wife was held liable upon her promise to pay the debt of her deceased husband due upon a stock of goods. In that case the court said: "This contract was one that was independent of that which plaintiff's husband had made with the defendant upon which his estate was indebted to the defendant; the plaintiff's undertaking to pay the debt was founded upon an agreement with defendant under which she should retain the stock of drugs, and continue to keep her stock replenished by obtaining additional supplies of drugs on the credit from the defendant. In consideration of such advantages to herself she promised to pay the debt. The rule is deduced by Mr. Roberts, in his treatise on the Statute of Frauds, 232: `That, if the consideration of the new promise spring out of any new transaction or moved to the party promising upon some fresh and substantial ground of a personal concern to himself, the statute of frauds does not attach.' Browne on Statute of Frauds, § 212. This case seems to come within the above rule."
In that case the promise of the widow to pay the debt of the deceased husband was absolute and unconditional. It was not a promise to pay the debt if the administrator of the estate or some one else did not pay it.
Appellee has cited several authorities in support of the contention that, if Williams' agreement to pay Cowan Bros.' debt was supported by a valuable consideration passing to Williams, his agreement would not be within the statute of frauds, including Spencer v. Nalle, 143 S.W. 991, by the Court of Civil Appeals for the Third Judicial District; Blakeney v. Nalle, 45 Tex. Civ. App. 635, 101 S.W. 875, by the same court; Hilliard v. White, 31 S.W. 553; Eppstein v. Wolfe, 35 S.W. 52; Monroe v. Buchanan,27 Tex. 241; Gay v. Pemberton, 44 S.W. 400. In each of the cases cited it seems that a parol agreement to pay the debt of another, supported by a valuable consideration to the promisor, was held not to come within the statute of frauds. In some of those cases the agreements seem to have been mere contracts of guaranty, and in others the contracts were unconditional agreements to pay debts of others in part consideration for conveyances of property to the promisors. As said by our Supreme Court in Muller v. Riviere, 59 Tex. 640, 46 Am.Rep. 291, the authorities in other states are hopelessly in conflict upon the question now under discussion. It seems, also, that the same might be said of the decisions of the Courts of Civil Appeals of our own state.
"To constitute the contract of suretyship or guaranty, the same things are necessary as to constitute any other contract, viz.: That the parties be competent to contract; that they actually do contract; and that the contract, if not under seal, be supported by a sufficient consideration." 1 Brant on Suretyship and Guaranty, § 3.
"Where the consideration between the principal and creditor has passed and become executed before the contract of the surety or guarantor is made, and such contract was no part of the inducement to the creation of the original debt, such consideration is not sufficient to sustain such contract." 1 Brant on Suretyship and Guaranty, § 17. To the same effect is Baker v. Wahrmund, 5 Tex. Civ. App. 268, 23 S.W. 1023.
It thus appears that whether or not the agreement of Williams to pay the debt of Cowan Bros. was a contract of guaranty simply, or whether he was liable thereon as an undertaking for his own benefit to be performed without regard to Cowan Bros.' liability therefor, is not to be determined alone by the simple fact that such promise was supported by a valuable consideration passing to him. In Spann v. Cochran Ewing,63 Tex. 240, it was held that one who, in part consideration for the purchase of property, assumes the payment of an outstanding mortgage indebtedness against the property cannot claim the benefits of the statute of frauds. In that case the following language is used: "The rule is thus stated: `The general principle prevailing in all the cases under this branch of the statute of frauds is that, whenever the defendant's promise is in effect to pay his own debt to the plaintiff, though that of a third person may be incidentally discharged, the promise need not be in writing.' Browne on Statute of Frauds, 165. `It contemplates a promise to answer *Page 133 
GULF, C. S. F. RY. CO. v. RIORDAN for another's debt, a promise for that purpose, a mere guaranty; and it never was meant that a man should set it up as a pretext to escape from the performance of a valid verbal obligation of his own, because, in performing it, the discharge of a third party's debt was incidentally involved.' Browne on Statute of Frauds, 212. The same rule is laid down by a late author. Reed on the Statute of Frauds, 115."
This case illustrates the distinction between what is usually termed an "original" agreement, not within the statute of frauds, and a "collateral" agreement, which is within the statute of frauds. The liability of a purchaser of property upon an indebtedness outstanding against it, and which he has assumed in part consideration for the sale, and thereby made the debt his own, is the same as if he had signed the obligation with the maker; in other words, his liability is absolute, and not conditional upon the failure of the maker of the note to pay the debt. In no sense is such a contract one of guaranty merely to the owner of the obligation.
In the present case no claim is made that the milling company sold to Williams any title in the goods. On the contrary, after Malone discovered the fact that the goods had been sold by Cowan Bros. to Williams with intent on the part of the vendor and vendee to defraud the creditors of the vendor, the milling company did not elect to rescind the sale and claim the goods, but continued to claim the indebtedness against Cowan Bros., transferred the account to the plaintiff bank, and procured the institution of this suit claiming the same liability, and procured a judgment against Cowan Bros. as well as against Williams. The only consideration alleged and proven to support the promise of Williams to pay Cowan Bros.' account to the milling company was the agreement on the part of the milling company to forbear the fixing of an attachment lien upon the goods.
For the reasons noted, the appellant's first assignment of error is sustained, the judgment of the trial court is reversed, and judgment is here rendered in favor of appellant, omitting as unnecessary any discussion of the other assignments contained in appellant's brief. In all other respects the judgment is undisturbed.
Reversed and rendered for appellant.