## BROOKE SMITH & CO. v. SOUTHLAND LIFE INS. CO. (No. 6943.)

(Court of Civil Appeals of Texas. Austin. Dec. 9, 1925.)

**1. Bills and notes ⬯⬯59—One cannot be charged with liability on negotiable instrument unless his name appears thereon.**

One cannot be charged with liability on negotiable instrument unless his name appears thereon in some capacity.

**2. Frauds, statute of ⬯⬯23(1)—Statute does not bar action on oral "original" promise to perform obligation.**

Rev. St. 1925, art. 3995, subd. 2, does not bar action on oral "original" promise to pay or to perform obligation, though effect of it may be to extinguish debt of another.

**3. Frauds, statute of ⬯⬯23(1)—Action on "collateral" promise to answer for debt of another is barred by statute. ·**

Action on "collateral" promise to answer for debt of another, in event such person fail to pay, is barred by Rev. St. 1925, art. 3995, subd. 2.

**4. Frauds, statute of ⬯⬯27—Action on contract, in part oral, between insurance company and bank, held not barred by statute.**

Action on contract, in part oral, between insurance company and bank, providing that notes made on account of premiums subject to approval of bank were to be discounted and proceeds placed to credit of bank, and that

such notes were to be taken in name of bank, but insurance company would take them up, in event they were not paid by makers within year they matured, *held* not barred by Rev. St. 1925, art. 3995, subd. 2; such contract constituting original undertaking by insurance company to pay notes which makers failed to pay. . :

**5. Evidence ⬯⬯441(1)—Oral provision of contract held not unenforceable as attempt to vary terms of written portion of contract.**

Oral provision· of contract between insurance company and bank, providing that if notes deposited by insurance company were not paid by makers within year they matured insurance company would take them up, *held* not unenforceable·as attempt to vary written portion of contract, providing that notes made on account of insurance premiums subject to approval of bank were to be discounted and proceeds placed to credit of insurance company.

**6. Evidence ⬯⬯410—A bank deposit or account is subject to explanation by parol.**

A bank deposit or account is subject to explanation by parol evidence.

Appeal from District Court, Brown County ;– J. O. Woodward, Judge.

Action by the Southland Life Insurance Company against Brooke Smith & Co. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Wilkinson & Wilkinson, Harrison & Woodruff, and R. L. McGaugh, all of Brownwood,· for appellant.

McCartney, Foster & McGee, of Brownwood, and Seay, Seay, Malone & Lipscomb, of Dallas, for appellee.

BLAIR, J. Appellee, Southland Life Insurance Company, a corporation, sued. appellants, Brooke Smith & Co., a banking firm, and the individual members composing it, for an alleged deposit of $7,268.39, which it refused to pay upon demand or to honor checks or drafts drawn thereon. Appellants answered formally, and by special plea set up a contract, partly written and partly oral, with appellee, under the terms of which it sought to withhold payment of the deposit, and also asserted a cross-action for damages because of an alleged breach of said contract.

Appellee addressed several general and special exceptions to the contract and cross-action thus pleaded, as being an apparent attempt to charge it with liability on a number of promissory notes to which its name did not appear in any capacity, as an attempt to vary the terms of a written contract by an oral contract, and, in effect, invoked subdivision 2 of article 3995, of the Revised Statutes 1925, known as the statute of frauds. These exceptions ·were .sustained by the trial court and appellants' answer and cross-action stricken out.

After hearing the evidence the court in-

⬯⬯For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

(278 S.W.)

structed a verdict for appellee in the sum of $8,380.42, representing the $7,268.39 deposit, with 6 per cent. interest from the date of demand to the date of judgment. The judgment also bears the same rate of interest. The appeal is from this judgment, and is predicated upon the action of the trial court in sustaining the general and special exceptions to the contract and cross-action pleaded in defense of the suit by appellant.

The material portions of the answer and cross-action necessary to a decision in this case are as follows:

"And further and specially answering herein these defendants say: That on and about April 12, 1920, plaintiff, Southland Life Insurance Company, was engaged in the business of soliciting and making contracts of life insurance and issuing thereon its policies of life insurance, and at that time had and maintained for that purpose an office in the City of Brownwood, Tex.; in charge of the firm of Doerr & Witliff, who were its agents for such purpose. That in the conduct of its said business said plaintiff company, acting by and through said agents, was taking a large number of notes in payment of the first year's premiums or amounts due it for contracts of life insurance so made by and through said agents, and the policies issued thereon by it to its customers. That on or about said date said plaintiff company, acting by and through its said agents thereunto duly authorized by it, entered into the following agreement and contract with these defendants, Brooke Smith & Co., to wit: That the notes so taken for first year's premiums were to be taken payable to Brooke Smith & Co. or order, for reasons hereinafter stated, although legally and equitably belonging to plaintiff, and that said notes were to be submitted by said Doerr & Witliff to these defendants for their judgment as to the solvency and reliability of the makers thereof if and before same were accepted, and, if same were approved by these defendants, these defendants were to credit plaintiff on their books, as though it were a deposit made by plaintiff in their bank, with the principal of said notes, less a discount of 10 per cent. of said principal; it being contemplated, although not expressly stipulated, by the terms of said contract, that such credits or deposits and the account created thereby would not be checked out or drawn upon prior to December 15th of each year next after the maturity of said notes respectively. That by the further terms of said contract it was expressly agreed and understood that, if any of said notes so discounted were not paid by the makers thereof to these defendants on or before the 1st day of December of the year of their maturity, that plaintiff would promptly thereupon take up such unpaid notes, indorsed without recourse by these defendants, by paying these defendants the amount thereof, that is to say, the principal and interest due thereon up to that date; and it was further agreed that plaintiff would at all times keep on deposit with defendants an amount equal to the principal and interest due, or to become due, on all notes unpaid in whole or in part. That the aforesaid contract was oral, and a part only was reduced to writing, the part so reduced to writing being:

" 'Brownwood, Tex., April 13, 1920.
" 'Southland Life Insurance Co., Dallas, Texas —Gentlemen: All settlements received on business secured in connection with Mr. Brooke Smith, president, are to be credited to the account of the Southland Life Insurance Company, in the Brooke Smith & Co. Bank of Brownwood, Brown county, Texas, on open account. Notes made on account of first year's premiums, subject to the approval of said bank, are to be discounted and proceeds placed to credit of the company. It is contemplated that the account is not to be checked against until December 15th, but the company reserves the right to check against the same at any time it may desire. Where payment is made with application and deposited, said application being declined, the amount of these payments are to be checked out so that the settlement can be returned to applicant.
" 'Please confirm, and oblige,
" 'Yours very truly, Doerr & Witliff.
" 'We have read the above; it is satisfactory and we hereby agree to same.
" 'Brooke Smith & Co.,
" 'Ward McConnell, Cashier.'

"That the part of said contract that was not reduced to writing was that part which provided, as above stated, that said notes were to be taken in the name of Brooke Smith & Co., the rate of discount, and that plaintiff would take up such notes as had been discounted by defendants by paying to defendants the principal and interest due thereon, in the event said notes were not paid by their makers on or before December 1st of the year of their maturity, and would at all times keep on deposit with defendants an amount equal to the principal and interest due, or to become due, on all notes yet unpaid in whole or in part."

It was further alleged that the consideration moving to appellee was largely to procure the services of appellants in passing upon the solvency and ability of the makers of the notes. It was also alleged that the reason for making the notes payable to Brooke Smith & Co. was that it might appear on their face to be a direct obligation to the local bank, and would, therefore, for many reasons, be more easily and readily collectable than if they were made payable to the nonresident insurance company.

By way of cross-action it was alleged that: Pursuant to the contract as above pleaded, appellant bank approved a large number of notes for the first year premiums on life insurance contracts aggregating $35,375.39, and credited 90 per cent. thereof, or $31,837.85, to the account of appellee in said bank. That thereafter about $8,548.70 of said account, representing about $9,498.55 of the principal of said notes, was surrendered to the makers whose applications for insurance appellee rejected, which was alleged to be in accordance with a part of the written contract above pleaded. That appellee made drafts upon said account as follows: December 18, 1920, $5,000; December 21, 1920, $5,000; January 28, 1921, $6,000; October 29, 1921, $800.

It was further alleged that on April 3, 1922, there remained an apparent deposit in said bank to the credit of appellee, the sum of $7,274.56; that there also remained in the hands of said bank uncollected notes whose principal aggregated about $9,952.71, on which interest in the sum of $400.90 had accrued; that although plaintiff had used due diligence to collect them the makers thereof had failed and refused to pay them, and thereupon appellants, exercising the right of offset given them by law, applied said amount of $7,274.56 remaining apparently on deposit in their bank in payment of the principal and interest due on said notes, leaving a balance due appellants at·that time of $3.079.05, of which amount it later collected $2,183.20, which left an amount of $895.84 as a·balance due on discounted notes; for which it asked judgment with interest. It was further alleged that appellants stood ready to indorse the notes so held by them without recourse, and stood ready to deliver them to appellee upon its paying their face value and interest.

[1] Appellee insists that the case is determined by the simple and· well-settled rule that one cannot be charged with liability of a negotiable instrument unless his name appears thereon in some capacity. But this rule, though true, is rather aside the mark. The question here is whether the contract pleaded in defense of the suit constitutes an original undertaking by appellee to promote some purpose or interest of its own, or to pay its own debt in a particular way; or whether it is a collateral undertaking or promise on its part to become surety or guarantor of the makers of the first year premium notes given in payment of life insurance policies issued by it to said makers. If it is the former, the court erred in sustaining the exceptions to the answer and cross-action; but if the latter, the transaction is one condemned by the statute of frauds, because it is not in writing.

[2, 3] Since an early date courts have universally used the words "original" and "collateral" to express the distinction between the two classes of promise to pay or perform some obligation, and have held that an oral original promise to pay or perform an obligation is not within the statute, because, although the effect of it may be to extinguish the debt of another, it is not a promise to do so; while the collateral promise to answer for the debt of another in the event he should fail to pay comes within the statute and must be in writing. 27 Corpus Juris, 132, and cases cited under note 14; Green v. Dallahan, 54 Tex. 281; Muller v. Riviere, 59 Tex. 640, 46 Am. Rep. 291; Pool v. Sanford, 52 Tex. 621; Hart-Toole Furniture Co. v. Shahan (Tex. Civ. App.) 220 S. W. 181; Carla Land Co. v. Asherton State Bank (Tex. Civ. App.) 164 S. W. 1066; Brown v. Bank, 88 Tex. 265, 31 S. W. 285, 33 L. R. A. 359; Hein v. John Finnigan Co. (Tex. Civ. App.) 163 S. W. 124. See numerous Texas cases as well as cases from other states and from England in 27 C. J. 132, note 14, and 27 C. J. 140, note 60.

The difficult question in respect to the application of the rule of original and collateral promises or undertakings is to determine from the language used whether the promise or undertaking is intended as an original one, or whether it is intended as one collateral to· the engagement or liability of a third person. The authority 27 Corpus Juris, p. 135, says:

"The test is whether the promise was in fact made and· intended as collateral or original, and in determining this question regard must be had to the situation of the parties, and all the circumstances of each particular case."

In Harburg India Rubber Comb Co. v. Martin, 1 King Bench, 778, it was held:

"The test to be applied to every case is, whether the party sought to be charged is the principal debtor, primarily liable, or whether he is only liable in case of the default of a third person; in other words, whether he is the debtor, or whether his relation to the creditor is that of surety for the performance, by some other person, of the obligation of the latter to the creditor." Brown v. Weber, 38 N. Y. 187, 189 (quoted White v. Rintoul, 108 N. Y. 222, 226, 15 N. E. 318; Booth v. Eighmie, 60 N. Y. 238, 19.Am. Rep. 171 [aff. 3 Thomp. & C. 378]).

The following is from Emerson v. Slater, 22 How. 28, 16 L. Ed. 360:

"Whenever the ·main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself, or damage to the other contracting party, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability."

This rule was quoted and applied by the Supreme Court in Lemmon v. Box, 20 Tex. 329. It has been adopted and applied in a great multitude of cases in Texas. See Housley v. Strawn Merchandise Co. (Tex. Civ. App.) 253 S. W. 677, and cases there cited.

Davis v. Patrick, 141 U. S. 479, 12 S. Ct. 58, 35 L. Ed. 826, holds:

"The thought is, that there is a marked difference between a promise which, without any interest in the subject-matter of the promise in the promisor, is purely collateral to the ·obligation of a third party, and that which, though operating upon the debt of a third party, is also and mainly for the benefit of the prom-. isor."

In Peele v. Powell, 156 N. C. 553, 73 S. E. 234, it is held:

"If, however, the promise does not create an original obligation, and it is collateral, and is merely superadded to the promise of another to pay the· debt, he remaining liable, the prom-

(278 S.W.)

isor is not liable, unless there is a writing; and this is true whether made at the time the debt is created or not."

In the case of Muller v. Riviere, supra, the Supreme Court recognized the irreconcilable conflict of decisions and the confusion and doubt incident to the application of the statute of frauds to verbal contracts to pay the debt of another; but quoted with approval from Brant on Suretyship, § 56, the following as the true test:

"Neither is the nature of the consideration a sufficient test. The true test is, what is the substance of the transaction between the promisor and promisee? If it is a mere promise to answer for another, it is within the statute. If it is a promise to pay the promisor's own debt in a particular way, it is not within the statute."

[4] Apply these tests to the contract pleaded by appellant, and but one answer can be given to the question here, and that is, if the contract was made as alleged it constitutes an original undertaking, the main purpose of which was to subserve the pecuniary or business interest of appellee, to which the promise to pay or take up the notes representing first year premiums given in payment of insurance policies issued by it was an incident. The substance of the transaction alleged was an agreement whereby appellants furnished appellee with a workable plan and greatly facilitated the matter of paying first-year premiums on insurance policies issued by it. That the contract alleged was beneficial to all parties to it is without question. Through the arrangement the appellee was enabled to do a great volume of insurance business, the first year's premiums on which in notes alone amounted to more than $35,000—$16,800 of which appellee has already received payment under the contract with appellants; a little over $8,500 of which had to be returned to the applicants whose applications were refused under the terms of the contract with appellants; the balance of which is represented by the deposits and notes involved in this suit. In this undertaking the services of Brooke Smith & Co., in passing upon the solvency and liability of the makers of the notes and in financing the project, as well as facilitating collection of the notes, was no doubt a very valuable asset to appellee's business of writing insurance. It no doubt enabled many to purchase insurance policies who could not have otherwise done so. The question of who should be finally liable for the payment of notes which the makers thereof had failed to pay under this arrangement is without question the subject-matter of a legitimate contract between the parties, and is merely incidental to the larger undertaking, and a part of it.

[5] Appellee's suggestion that the undertaking or contract pleaded violates the rule relating to the varying of written contracts by an oral contract is not available in this case. The contract to pay for the insurance represented by the notes is in no way varied, so far as Brooke Smith & Co. is concerned, but is being paid in accordance with its terms by appellant under its original undertaking to take up and pay off these notes in the event the makers thereof failed to pay them at their maturity.

[6] It is too well settled in this state to merit discussion here that a bank deposit or account is subject to explanation by parol evidence. Richardson v. Isham (Tex. Civ. App.) 265 S. W. 1101.

We are of the opinion that the case must be reversed and remanded, and, upon another trial, should the jury find that the alleged contract was entered into, then it becomes the duty of the court to interpret the same as indicated in this opinion.

The cause will be reversed and remanded.