**JOHNSON CO. v. CITY CAFE.**

No. 3033.

Court of Civil Appeals of Texas. Beaumont.

Dec. 31, 1936.

Ramsey & Ramsey, of San Augustine, for appellant.

W. T. Davis, of San Augustine, for appellee.

WALKER, Chief Justice.

This was an action in justice court by appellee, the City Cafe, against appellant, the Johnson Company, for $105.50, the account for meals furnished by it to one C. M. Head. From a judgment in justice court in favor of appellee, appellant appealed to county court of San Augustine county, where, upon trial to a jury, judgment was again entered in favor of appellee for $105.50; from that judgment the Johnson Company has perfected its appeal to this court.

The following testimony was offered by appellee in support of its judgment:

"My name is W. M. Wade, and I am the owner and operator of The City Cafe under the trade name of The City Cafe in San Augustine, Texas. I know C. M. Head, and I knew him on or about the 21st day of May, 1934. He came here with the Johnson Construction Company to do some road work, and he was their foreman. I know Ed Johnson, and I knew him on or about the 21st day of May, 1934. C. M. Head boarded at my cafe on credit when they first came in. When his account got about $100.00 behind I approached Ed Johnson about it and he gave me a check on The Johnson Company for the account. On or about the 21st day of May, 1934, when Mr. Head began to get behind with his account we were talking about it in the cafe. Ed Johnson was in the cafe when we were having this conversation about the account. Mr. Johnson came over where we were and he said 'go ahead and let him continue to have meals, and I will pay for it if he doesn't.' After this conversation I continued to let Mr. Head have meals on credit. About the time The Johnson Company completed their road work in San Augustine County, Mr. Head had not come in and settled his account. I approached Mr. Johnson about it and he said he couldn't pay it, that he had lost money on the job, and that Mr. Head did not have any

thing coming. The account amounts to $105.50, it has not been paid. Mr. Johnson, the agent for The Johnson Company, refused to pay it when I demanded payment from him. The itemized account that I swore to represents the meals and other things that Mr. Head got from my cafe. * * *

"I told Mr. Head that something had to be done about his account, and if something wasn't done that I would have to stop his credit. Yes, Mr. Johnson told me in the cafe in the presence of Mr. Head, and Mrs. Lera Thacker to go ahead and let the account run and if Mr. Head didn't pay for it he would. Mr. Johnson agreed to stand for the account. Mr. Johnson never at any time promised in writing to pay this account. * * *

"I would not have advanced that line of credit if Mr. Johnson had not promised to pay it."

Direct examination of Mrs. Lera Thacker, a witness for plaintiff: "My name is Mrs. Lera Thacker. I work in the City Cafe as cashier and bookkeeper. I knew C. M. Head along about the time he was boarding at the cafe. I knew Ed Johnson about that time. Yes, I remember the conversation Mr. Johnson, Mr. Head and Mr. Wade had about the C. M. Head account. Mr. Johnson said that he would stand for the account. * * * Yes, I was present when they were talking about the account, and it was my understanding that Mr. Johnson stood for the account."

Direct examination of Mrs. Lela Crumpler, a witness for plaintiff: "I am employed at the City Cafe as cashier and assist in keeping the books. I know C. M. Head and Ed Johnson, and I knew them at the time Mr. Head was boarding at the cafe. The account sued on here was written up by me, and was taken from the ledger. I knew about the conversation Mr. Wade had with Mr. Johnson about the Head account. After that conversation Mr. Wade told me to go ahead and let Mr. Head have meals on credit that everything was all right."

On the testimony, as copied above, we sustain appellant's proposition that its promise to pay the debt of C. M. Head was collateral; that is was not an original promisor. Therefore the promise was within the statute of frauds and did not create any liability against appellant. Housley v.

Strawn Merchandise Co. (Tex.Com.App.) 291 S.W. 864, 867; Houston & T. C. R. Co. v. Fox, 106 Tex. 317, 166 S.W. 693; Johnson v. Tindall (Tex.Civ.App.) 161 S.W. 401, 403; Ramsey v. Beall (Tex.Civ. App.) 281 S.W. 297; Texas Jur. vol. 17, § 212, pp. 521–523; Tex.Jur. vol. 20, § 25, pp. 234, 235. In the Housley Case the Commission of Appeals said, judgment expressly approved by the Supreme Court: "A promise to pay the debt of another, if not in writing, does not have the effect to create a legal obligation."

We quote as follows from the Johnson case, giving the testimony of the plaintiff on cross-examination and the conclusion of law based on his testimony: "The substance of the conversation that I had with Calvin Johnson at the time I sent for him to come up to the house, and before the operation was performed, and before I did any medical service for Will Allen's wife, was that I told Calvin Johnson that I would not do any work or perform the operation on Will Allen's wife and look to Will Allen for the pay because he was a transient negro, going from one sawmill to another, and he (Calvin Johnson) told me to go ahead and perform the operation, and if Will Allen did not pay for it he would. Calvin Johnson never did at any time promise in writing to pay this debt. Appellant objected to this testimony and asked the court to withdraw it from the jury because it showed that 'the defendant Calvin Johnson did not bind himself primarily to pay said debt but only to become security therefor, and said promise, being verbal and not in writing, would not bind the defendant Calvin Johnson legally to pay said debt.' The motion to have this testimony withdrawn from the jury should have been sustained. It is well settled that the defense of the statute of frauds is available under a general denial if interposed by seasonable objection to testimony. International Harvester Co. v. Campbell, 43 Tex.Civ.App. 421, 96 S.W. 93. This testimony conclusively shows that appellant's promise to pay for the services rendered by appellee to his daughter was a collateral and not an original undertaking."

It follows that the judgment of the lower court should be reversed and judgment here rendered in favor of appellant, and it is accordingly so ordered.